## Sparkman et al. v. Mocabee et al.

Jan. 30, 1942.

James C. Clay for appellants.

Arthur C. Jarvis and Lester Hogge for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This action partakes of the nature of and might appropriately be described as "Much Ado About Nothing." There is only one acre of land forming the sole subject matter of the litigation and it, in its natural unimproved state, was, or is, not worth, according to the proof, exceeding fifteen or twenty dollars, some of the witnesses putting the value as low as ten dollars. The background is this:

Warren Alderson, at the time of his death in 1902, owned some 3,500 or 4,000 acres of land situated in various counties of this commonwealth, and some of it in other states. Among his children was a daughter named Sarah, who prior to 1882 married W. J. Fletcher. In that year (1882) they moved upon one of the tracts of land owned by Alderson situated in Rowan County containing 125 acres, designated in this record as the "Scott Fultz" tract, which, according to some of the testimony in the case, was pursuant to a parole gift of that tract to Mrs. Fletcher, nee Sarah Alderson. The couple, with their increasing family, continued to reside on it the remainder of their lives, though in the meantime they sold portions of it to others, and also sold some of the minerals and mineral rights. Alderson and wife in 1902 executed a deed to their daughter, Sarah Fletcher, to the land which had been so occupied by her and her husband, which is more or less ambiguous and confused in its language as to the character of estate conveyed to her, since in some of its parts it purports to convey an absolute fee title, whilst other language employed therein attempted to qualify her estate to one for life and then to her children.

After the execution of that deed Alderson made his will, in which he devised the same tract of land to his daughter, Sarah, in language equally confusing as to the nature and character of her estate therein. At any rate, there was no change in the possession of the tract of land, nor its use and management by Mr. Fletcher from the way it had been possessed and managed by him prior to the execution of the deed by the Aldersons to his wife

in 1902, nor was any different course pursued by the Fletchers after the death of Alderson and the probate of his will. The Fletchers, as we have stated, made absolute conveyances to portions of the tract so occupied by them to different persons, one of which was a deed executed on February 24, 1919, to Charles Sparks and his wife Amelia Sparks, nee Amelia Fletcher, conveying to them 47½ acres of the original 125-acre tract, and which embraced the one acre involved in this litigation. A majority of the other Fletcher children, with their spouses, who were all adults at the time that deed was made, joined their parents in its execution, the consideration therefor being $250 cash, which was paid by Sparks to the Fletchers. Sparks and wife, nee Fletcher, held the tract so conveyed to them by that deed for only about one year, when, in consideration of $260 paid to him by Fletcher and wife they attempted to reconvey the tract which they had so conveyed to the Fletchers. That conveyance was attempted to be made in writing, which was acknowledged and later put to record, but it is so incomplete that it is doubtful if it could be considered as effectual for the purpose intended by its execution. Nevertheless, possession was held by the vendees under it from that time forward, and on November 2, 1932, they sold from the 47½ acre tract conveyed to Sparks, and later attempted to be reconveyed by him to them, to the appellee, Minnie Mocabee, the one acre involved in this litigation, for which she paid to them the agreed consideration of $75, but which is shown in this case to be some four or five times its then actual value.

Mrs. Mocabee and her husband immediately began the erection of improvements on that acre, consisting of a suitable concrete building for a gasoline station, with attached living apartments, and other outbuildings. They also leveled the acre out to the public road which it adjoined, built a rock retaining wall next to the highway, and did extensive and costly landscape work thereon, all of which, according to the proof, enhanced the value of the acre of land they so purchased anywhere from $2,500 to $3,500. The majority of plaintiffs, who are the children of W. J. Fletcher and wife, lived in and about the vicinity at the time of the conveyance to Mrs. Mocabee and also thereafter, and they saw and knew of the improvements being made by Mrs. Mocabee and her husband on the acre of land bought by and conveyed to them, without any objection or protest whatever. The other

Fletcher children with their spouses resided out of this state, but they visited their parents more or less frequently and they also had knowledge of the conveyance to Mrs. Mocabee, as well as the improvements made and being made by her and her husband.

On January 31, 1939, the Fletcher children, including Mrs. Sparks and her husband, filed this action in the Rowan circuit court against the Mocabees, and W. J. Fletcher (who died later in that year) and his second wife, and in their petition they averred that they owned the land under both the deed and will of Warren Alderson, hereinbefore referred to, in which they claimed that Mrs. Sarah Fletcher obtained therefrom only a life estate in the original 125-acre tract with remainder to plaintiffs, and they prayed that they recover the land from the Mocabees in this, their ejectment action. The answer of the defendant denied title to the involved acre of land in any of the plaintiffs, and asserted title in Mrs. Mocabee, both under the deed which the Fletchers executed to her, and also averred title by adverse possession, which they alleged began in 1882 when the Fletchers moved upon the 125-acre tract following their marriage, and which adverse possession by them and their vendees, through whom the Mocabee title was derived, had continued for more than fifteen years so as to ripen their title by prescription. They also pleaded an estoppel against plaintiffs arising from their knowledge of the Mocabee purchase and improvements made pursuant thereto without protest or objections by or from any of them. Following pleadings made the issues, and upon trial the court dismissed plaintiff's petition, to reverse which they prosecute this appeal.

The trial court based its judgment exclusively upon the defense of estoppel, which we are inclined to think was correct, but if not so, then the title by prescription relied on by defendants and appellees is undoubtedly established by the admitted facts contained in the record, and which amply justifies and supports the judgment appealed from. So that, if, perchance, the court was mistaken in basing his judgment upon the defense of estoppel, yet if was manifestly sustainable under the plea of prescriptive title. In determining the question of the availability of the latter defense it is unnecessary to determine whether or not the possession of the Fletchers of the 125 acres, from and after the time they moved

upon the tract in 1882 to the time the Aldersons executed their deed to Mrs. Fletcher, was or not adverse to the owners in remainder of the tract, since later transactions undoubtedly created a situation producing adverse possession by the Fletchers of the involved acre of ground, and which was held by them and their vendee for 19 years 11 months and 7 days before this action was filed.

The transaction referred to as an undoubted beginning of adverse possession by the Fletchers was their sale of 47½ acres of the land to Sparks and wife, the latter of whom was their daughter, and the other vendee her husband. The deed to them was an absolute one and, we repeat, was jointly executed by a majority of the Fletcher heirs and their spouses. So that, in no event could any of those who so joined in that deed succeed in this action, and to the extent of their interest Sparks and wife obtained an absolute deed to the portion of land so conveyed to them. But if they had not joined in that deed, then all of the Fletcher heirs were then put upon notice that the Fletchers and their vendees of the 47½ acre tract conveyed were claiming and dealing with the land as though they were the absolute owners thereof, and Sparks took possession of the portion conveyed to him claiming to be the absolute owner of it to its outside described and designated boundaries, which, we repeat, included the acre later conveyed to the appellee and defendant, Mrs. Mocabee. Sparks, as such absolute owner, at least attempted to reconvey the same 47½ acres back to the Fletchers for a valuable consideration paid to him by them, and under which attempted conveyance (whether legally effectual for that purpose or not) they resumed possession thereof. From that parcel they carved the acre that was in 1932 conveyed to Mrs. Mocabee; so that, from the date the deed was executed to Mrs. Sparks and her husband there were more than 15 years of continuous adverse possession of the 47½ acres of land, and which had the effect to ripen the title in Mrs. Mocabee to the controverted acre involved in this litigation, which bears the earmark of sons-in-law parentage. There is and can be no refutation of our conclusion, since it is so plainly correct that it needs no substantiation or fortification by either opinions of this court or from any text.

Wherefore, for the reasons stated, the judgment is affirmed.